IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DEBRA ELLEN SAVANI, )
        Plaintiff, )
)
    v. ) 2:16-CV-333
)
)
COMMISSIONER OF SOCIAL )
SECURITY, )
        Defendant. )

MEMORANDUM

Presently before the Court for disposition are cross motions for summary judgment (ECF Nos. 12 and 15). For the reasons set forth below, the plaintiff's motion (ECF No.12) is denied, the defendant's motion (ECF No. 15) is granted and the decision of the Commissioner is affirmed.

On March 23, 2016, Debra Ellen Savani , by her counsel, filed a complaint pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. §405(g) for review of the Commissioner's final determination disallowing her claim for a period of disability or for disability insurance benefits under Sections 216(i) and 223 of the Social Security Act, as amended, 42 U.S.C. §§416(i) and 423 on the basis that she had failed to demonstrate that she was disabled on or before, December 30, 2010, the date on which she was last insured.

On March 4, 2011, the plaintiff filed an application for disability benefits alleging that she was disabled since January 31, 2006 (R.244-245), and benefits were denied on May 25, 2011 (R.124-128). On July 7, 2011, the plaintiff requested a hearing (R.129, 132-133) and pursuant to that request a hearing was held on September 6, 2012 (R.51-64). In a decision dated September 27, 2012, benefits were denied (R102-114), and on October 4, 2012, reconsideration was requested (R.188-190). Upon reconsideration and in a decision dated January 10, 2014, the Appeals Council remanded for further consideration (R.119-123). On May, 6, 2014 a further hearing was conducted (R.65-88) and in a decision dated July 25, 2014 benefits were again denied (R.9-45). On reconsideration the Appeals council affirmed the prior decision (R.1-3) and on March 23, 2016 the instant complaint was filed.

In reviewing an administrative determination of the Commissioner, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Commissioner that the plaintiff failed to sustain her burden of demonstrating that she was disabled within the meaning of the Social Security Act.

It is provided in 42 U.S.C. Section 405(g) that:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive....

Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. <u>Johnson v. Commissioner.</u> 529 F.3d 198 (3d Cir.2008) and the court may not set aside a decision supported by substantial evidence. <u>Hartranft v. Apfel</u>, 181 F.3d 358 (3d Cir.1999).

At the hearings held on September 6, 2012 and May 6, 2014 (R.51-88), the plaintiff appeared with counsel (R.53,67) and testified that she was forty-seven years old (R.54); that she developed an immune system problem after finishing chemotherapy (R.56,82); that her colostomy had been reversed (R.56); that her tumor marker levels are increasing (R.55); that she suffers from emphysema, constant pain, difficulty breathing and depression (R.56,79, 81); that she uses a breathing machine and is tired all the time (R.58,60); that she has a bipolar disorder for which she is not being treated (R.78,79); that she is unable to function on a day to day basis (R.72); that she is able to cook (R.59) and that she attended AA for her alcoholism (R.69-70).

At the hearings vocational testimony was also received (R.60-65, 85-88). The plaintiff's prior work was described as unskilled to skilled and of a light to medium nature (R.61, 85). When asked to assume an individual who could lift up to ten pounds, stand for about two hours and sit for about six hours in a workday (R.61) the expert testified that while such an individual could not perform the plaintiff's past work, there were a large number of jobs such an individual could perform (R.62-63, 85-86). However, if that individual had to carry out detailed instructions, make decisions, and respond to changes in routine, the witness said there would be no jobs such a person could perform (R.87).

The issue before the Court for immediate resolution is a determination of whether or not there is substantial evidence to support the findings of the Commissioner that the plaintiff was

not disabled within the meaning of the Act on or before December 31, 2010, the date on which she last met the special earnings requirement of the Act (R.12).

The term "disability" is defined in 42 U.S.C. Section 423(d)(1)(A) as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months....

For purposes of the foregoing, the requirements for a disability determination are provided in 42 U.S.C. Section 423(d)(2)(A):

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence ... "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. Section 423(d)(3). These provisions are also applied for purposes of establishing a period of disability. 42 U.S.C. Section 416(i)(2)(A).

While these statutory provisions have been regarded as "very harsh," nevertheless, they must be followed by the courts. NLRB v. Staiman Brothers, 466 F.2d 564 (3d Cir. 1972); Choratch v. Finch, 438 F.2d 342 (3d Cir. 1971); Woods v. Finch, 428 F.2d 469 (3d Cir. 1970). Thus, it must be determined whether or not there is substantial evidence in the record to support the conclusion of the Commissioner that the plaintiff was not disabled within the meaning of the Social Security Act.

For this purpose, certain medical evidence was reviewed.

In a report of a psychological evaluation dated April 14, 2007, Marvin D. Wheeler, Ph.D diagnosed a bipolar disorder and alcohol dependence in early remission and concluded,

> Ms. Savani's ability to carry out work related activities such as understanding, retraining and following instructions would not present any major level of difficulty but her ability to sustain attention

3

> to perform simple repetitive tasks on a consistent basis seems
> questionable due to her problems with follow through in completing
> basis tasks. Her ability to tolerate the stress and pressures associated
> with day to day work type activities is considered in the poor range at
> this time. (R.336)

The prognosis was guarded (R.334-340).

The plaintiff received mental health treatment from Mon Yough Community Services between January 17, 2007 and August 20, 2007 (R.561).

The plaintiff was treated by Dr. Sarma Rajkumar between August 8, 2007 and August 10, 2009 for major depression with mild symptoms. Alcoholism was also noted (R.820-832).

The plaintiff was treated at Health First Medical Associates between October 1, 2010 and October 29, 2010 for colon cancer and a chronic airway obstruction (R.341-360).

Pathology reports for the period from October 11, 2010 through November 19, 2010 reveal adenocarcinoma of the colon (R.361-373).

The plaintiff was treated at UPMC McKeesport between December 12, 2006 and December 6, 2010. A colon resection was performed and followed with chemotherapy. A bipolar disorder, homicidal and suicidal tendencies as well as substance abuse were also diagnosed. Psychiatric treatment as well as medication was recommended. In additional chronic alcoholism was reported (R.374-492).

The plaintiff last met the insured status of the Act on December 31, 2010 (R.12).

Records from the UPMC Cancer Center for the period from July 12, 2007 through February 7, 2011 reveal chemotherapy treatment for her Stage II colon cancer (R.505-559).

In a report dated March 14, 2011, it was noted that the plaintiff could frequently lift and carry up to ten pounds, stand or walk for up to two hours and sit without limitation (R.563-569).

The plaintiff was treated by UPMC/Jefferson Home Health between September 21, 2010 and March 17, 2011 (R.570-710).

The plaintiff received home health care from Chartwell Pennsylvania LP between December 9, 2010 and March 17, 2011 (R.711-778).

The plaintiff was treated at the UPMC Cancer Center between March 15, 2011 and March 8, 2012. She was said to be doing well but experiencing upper G.I. plain. Chemotherapy continued (R.799-819).

4

The plaintiff was evaluated by Dr. Rudolph Antoncic on April 18, 2012 who determined she had minimal degenerative knee changes (R.795-798).

The plaintiff was treated at Chaudhry Pulmonary Associates between September 15, 2010 and March 18, 2014 for small airway dysfunction; nicotine addiction; resting tachycardia and colon cancer. No active chest disease was observed. Medication was prescribed (R.493-504, 779-794 and 833-890).

The plaintiff underwent periodic reviews at the UPMC Cancer Center during the period between February 20, 2013 and March 21, 2014 (R.891-898).

In reviewing a disability claim, in addition to considering the medical and vocational evidence, the Commissioner must consider subjective symptoms. Baerga v. Richardson, 500 F.2d 309 (3d Cir. 1974). As the court stated in Bittel v. Richardson, 441 F.2d 1193, 1195 (3d Cir. 1971):

> Symptoms which are real to the claimant, although unaccompanied by objective medical data, may support a claim for disability benefits, providing, of course, the claimant satisfies the requisite burden of proof.

> In Good v. Weinberger, 389 F. Supp. 350, 353 (W.D. Pa. 1975), the Court stated: Bittel seeks to help those claimants with cases that so often fall within the spirit-- but not the letter--of the Act. That plaintiff did not satisfy the factfinder in this regard, so long as proper criteria were used, is not for us to question.

The applicable regulations require more explicit findings concerning the various vocational facts which the Act requires to be considered in making findings of disability in some cases. The regulations, published at 20 C.F.R. §§404.1501, et seq., set forth an orderly and logical sequential process for evaluating all disability claims. In this sequence, the Administrative Law Judge must first decide whether the plaintiff is engaging in substantial gainful activity. If not, then the severity of the plaintiff's impairment must be considered. If the impairment is severe, then it must be determined whether she meets or equals the "Listings of Impairments" in Appendix 1 of the Regulations which the Commissioner has deemed of sufficient severity to establish disability. If the impairment does not meet or equal the Listings, then it must be ascertained whether she can do her past relevant work. If not, then the residual functional capacity of the plaintiff must be ascertained, considering all the medical evidence in the file. The finding of residual functional capacity is the key to the remainder of findings under the new regulations. If the plaintiff's impairment is exertional only, (i.e. one which limits the

strength she can exert in engaging in work activity), and if her impairment enables her to do sustained work of a sedentary, light or medium nature, and the findings of age, education and work experience, made by the Administrative Law Judge coincide precisely with one of the rules set forth in Appendix 2 to the regulations, an appropriate finding is made. If the facts of the specific case do not coincide with the parameters of one of the rules, or if the plaintiff has mixed exertional and non-exertional impairments, then the rules in Appendix 2 are used as guidelines in assisting the Administrative Law Judge to properly weigh all relevant medical and vocational facts.

> Based on the evidence presented, the Commissioner concluded:
>
> The claimant last met the insured status requirements of the Social Security Act on December 31, 2010.
>
> The claimant did not engage in substantial gainful activity during the period from her alleged onset date of January 31, 2006 through her date last insured on December 31, 2010.
>
> During the period from December 12, 2006, the first medical evidence in record, through the date last insured, the claimant had the following severe impairments: small airways disease, depression, and anxiety. The claimant also has a history of significant alcohol abuse throughout the period at issue. As of September 2010, about three months prior to her date last insured, the claimant also had colon cancer.
>
> Although the claimant has alleged disability due, in part, to hypertension and mitral valve prolapse, medical evidence shows these impairments are nonsevere.
>
> While hospital records in December 2006, the first medical evidence in record, noted diagnoses of hypertension and mitral valve prolapse, those records also noted the claimant was simply maintained on a blood pressure regimen…
>
> Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments…
>
> Small airways disease was considered under the applicable Listings under 3.00 respiratory. However, none of the medical findings concerning the claimant's impairments meet or equal the criteria for severity… Colon cancer was considered under Listings 13.17 and 13.18, neoplastic diseases of the small and large intestines. Once again, while diagnosed with colon cancer, during the period at issue, medical records did not document that the claimant's cancer was

inoperable, unresectable, extending into surrounding structure, recurrent, or with metastases to or beyond the regional lymph nodes.

The severity of the claimant's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of listings 12.04 and 12.06… To satisfy the "paragraph B" criteria, the mental impairments must result in at least two or the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

Evidence in record, including her responses … and her testimony… through December 31, 2010, her date last insured, show the claimant engaged in a significant range of activities during that period…

With regard to concentration, persistence or pace, the claimant had moderate difficulties. Despite allegations of problems with concentration and memory, as well as not finishing what she started, multiple medical records documents that the claimant's concentration was good and her memory was intact…

As for episodes of decompensation, the clamant had experienced no episodes of decompensation, which have been of extended duration…

During the period at issue the claimant drove, went shopping to several stores on a regular basis, attended church weekly, attended her son's home basketball games, and went to doctor appointments, as well as DUI classes and alcohol treatment…

After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work…

There is no objective medical evidence in record to establish the existence of a severe impairment as of the alleged onset date or until mid-December 2006…

The first medical evidence in record dates to mid-December 2006. While establishing the existence of a severe mental impairment, those records also document a history of an ongoing significant alcohol abuse at that time…

[In April 2007] the evaluator diagnosed the claimant with bipolar disorder and alcohol dependence in early "partial" remission… the diagnosis of bipolar disorder is given no weight. It is unsupported by any clinical findings of this evaluation, which noted only sad mood and affect, and appears to be based solely

on the claimant's subjective responses on the Mood Disorder Questionnaire, insufficient in itself to support such a diagnosis. The diagnosis is also inconsistent with the other substantial evidence in record...

The claimant received only marginally more mental health treatment in the three-year period between discharge from the December 2006 hospitalization through December 31, 2010, her date last insured…

The vast majority of medical evidence during the period at issue occurred in a less than three month period prior and up to her date last insured.

In September 2010, the claimant again sought ER treatment…The claimant underwent surgical intervention for creation of a right transverse loop colostomy to evacuate the trapped stool and remove the obstruction. Left colon carcinoma was the probable diagnosis at discharge and revision surgery was planned to look for the suspected malignancy in about 4 to 6 weeks… The claimant acknowledged that despite encouragement not to do so, she continued to drink alcohol "daily." Although she alleged a history of bipolar disorder, that allegation is unsupported by any documented clinical findings… skilled nursing records repeatedly documented that the claimant continued to smoke 1½ packs of cigarettes per day, despite the known health risk and medical instruction to stop…

Progress notes in early October 2010 from a family practice group show the clamant reported she was "doing well" …

Colonoscopy in mid-October 2012 revealed a hard, friable obstructing mass on the left side of the colon and through the rectum, which biopsy confirmed was consistent with invasive moderately differentiated adenocarcinoma. The claimant was scheduled for additional surgery…

In early November 2010, the claimant underwent successful and uncomplicated left hemicolectomy to remove the obstructing colon cancer…

Subsequent treatment records from the visiting nurses providing in-home skilled aftercare for the cancer surgery show the claimant generally did well…

Almost immediately after port placement, the claimant began chemotherapy… the claimant had completed two sessions by December 31, 2010, the date last insured… those treatment records did not document the claimant reporting any adverse side effects or any symptoms from the treatment…

A Medical Source Statement, completed in March 2011, noted the claimant was capable of performing a range of sedentary work with just some postural limitations…. [This] opinion … is given significant weight, as it is well-supported by hospital records, records from her family doctor, and contemporaneous

chemotherapy records, as well as the reports from skilled nursing outpatient care…

In other testimony … the claimant acknowledged she did not stop working due to any impairment. She reported she stopped working in 2005, did not get unemployment, and her husband took care of her…

On the Function Report … the claimant also reported she helped dress her husband "because he had hip replacement surgery and is unable to bend." She stated she cooked simple meals "daily," did laundry, and fed her pets when her son could not do so… she acknowledged shopping in stores and driving… There is no objective evidence in record to support her allegations of having difficulty getting along with others and that allegation appears most inconsistent with multiple medical records…

Medical evidence shows the claimant was not diagnosed with colon cancer until mid-September 2010, less than three months prior to the date last [insured]…

The claimant was much less than forthcoming in her testimony regarding her alcohol abuse…

The claimant's range of activities during the period at issue also belie[s] her allegation of disability. The claimant tacitly acknowledged in testimony that she did not cease working due to any impairment and there is no objective medical evidence in record to document that she had any severe impairment at the time she ceased working. By her own testimony and some responses on the Function Report…as consistent with medical evidence in record, the claimant performed a range of activities during the period at issue…

[T]he undersigned must not[e] that the inconsistencies noted in the discussion of the medical evidence and the claimant's testimony… coupled with the overall paucity of medical evidence during the periods at issue, and the absence of medical records … raise questions about the claimant's credibility, as well as about her motivation and desire for treatment…

In sum, the … residual functional capacity assessment is supported by the weight of objective clinical diagnostic medical evidence, as well as clinical observations, during the period at issue, and the claimant's range of activities during that period…

Through the date[] last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed…

> The claimant was not under a disability… at any time from January 31, 2006, the alleged onset date, through December 31, 2010, the date last insured.

(R.14- 45).

The record demonstrates that while the plaintiff suffers from a number of maladies, through the date last insured, December 31, 2010, none of these ailments individually or in combination prevented her from engaging in substantial gainful activities. Nor at that time did she cease working because of the alleged ailments. Rather her discontinuation of work was voluntary and done in reliance on her expectation that her husband would support her. In addition, the Commissioner determined that the plaintiff's allegations lacked credibility. <u>Diaz v. Commissioner</u>, 577 F.3d 500,506 (3d Cir.2009).

Summary judgment is appropriate when there are no disputed material issues of fact, and the movant is entitled to judgment as a matter of law. <u>Chavarriaga v. New Jersey</u>, 806 F.3d 210 (3d Cir. 2015). In the instant case, there are no material factual issues in dispute, and it appears that the Commissioner's conclusion is supported by substantial evidence. For this reason, the plaintiff's motion for summary judgment (ECF No. 12) is denied, defendant's motion for summary judgment (ECF No.15) is granted, and the decision of the Commissioner is affirmed.

An appropriate Judgment will be entered.

s/ Robert C. Mitchell,
United States Magistrate Judge

Dated: September 27, 2016